# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | |
|---|---|
| M.W., by and through his next friends TOM WILLIAMS and FAYE WILLIAMS, TOM WILLIAMS, and FAYE WILLIAMS, | ) ) ) ) |
| Plaintiffs, | ) Case No. 09-05098-CV-SW-JTM ) |
| v. | ) ) |
| AVILLA R-XIII SCHOOL DISTRICT, | ) ) |
| Defendant. | ) |

# ORDER

This action was filed in November of 2009, by plaintiffs Tom Williams and Faye Williams, individually and as next friends for a minor, M.W. The Williams' suit arises under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. §§ 12010, *et seq*. ("ADA"), against the Avilla R-XIII School District ("Avilla"). The allegations center around M.W.'s attendance at Avilla during the 2006-07 and 2007-08 school years. In their two-count complaint, the Williamses allege that Avilla discriminated against M.W. based on disability and they seek various forms of relief, including compensation for them individually, based on costs and expenses they incurred as a consequence of the alleged disability discrimination. Currently pending before the Court is Avilla's motion for judgment on the pleadings and/or for summary judgment. In essence, Avilla advances three arguments:

    (1)    Tom Williams and Faye Williams lack standing to assert their individual claims under the Rehabilitation Act and the ADA;

    (2)    the claims being asserted in this litigation have not been administratively exhausted; and

(3) the uncontroverted material facts establish that – pursuant to the prevailing legal standards – Avilla did not discriminate against M.W. based on disability.

The Court will address only the first two arguments.

## A. Standing for Tom and Faye Williams

Count II of the Williamses' complaint asserts a claim for damages under the Rehabilitation Act and the ADA for Tom Williams and Faye Williams, individually, based on costs and expenses they allegedly incurred as a consequence of the disability discrimination suffered by M.W. at Avilla. Avilla argues that Tom Williams and Faye Williams, in their individual capacities, lack standing to seek damages under these two statutes because neither has a disability, nor are they seeking damages for their disabilities in Count II.

The resolution to the legal question raised by Avilla is complicated by the fact that several different statutes are potentially implicated when a student with disabilities encounters difficulties because of that disability while seeking a public education. In addition to the Rehabilitation Act and the ADA, the most prominent statutory enactment dealing with this issue is the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.* ("IDEA"). Congress enacted the IDEA to provide "a 'basic floor of opportunity' so that a child with disabilities has access to an individually designed education." *Stringer v. St. James R-1 School District*, 446 F.3d 799, 802 (8th Cir. 2006). To that end:

> School districts that accept federal funds under the IDEA must provide each qualifying disabled child within their jurisdictions with a "free, appropriate public education." 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A). A school district must tailor such education to meet the unique needs of each disabled child. A school district addresses this goal through the development of an IEP [Individualized Education Program] for each child setting forth her present level of performance, annual goals and objectives,

> specific services to be provided, an explanation of the extent to
> which she will not receive education with non-disabled children, a
> statement of modifications to district-wide assessment procedures
> needed in order for her to participate in such assessments,
> transition services needed, the projected dates and duration of
> proposed services, and objective criteria and evaluation procedures.

*Blackmon ex rel. Blackmon v. Springfield R-XII School District*, 198 F.3d 648, 658 (8th Cir. 1999) (*citations omitted*).

The parties are in agreement that parents (and other similarly situated third parties) enjoy "independent, enforceable rights" under the IDEA – rights that are separate and distinct from the rights the IDEA accords to a disabled child. *Winkelman ex rel Winkelman v. Parma City School District*, 550 U.S. 516, 526, 127 S.Ct. 1994, 2002 (2007). The Supreme Court reached this conclusion based on the explicit language employed throughout the IDEA. *Id*. at 523-24, 127 S.Ct. at 2000-01.[1]

---

[1] For instance, the stated goal of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education" and "ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. §§ 1400(d)(1)(A)-(B) (*emphasis added*). In addition, as noted by the *Winkelman* court:

> [The] IDEA requires school districts to develop an [individualized
> education plan or] IEP for each child with a disability with parents
> playing "a significant role" in this process. Parents serve as
> members of the team that develops the IEP. The "concerns"
> parents have "for enhancing the education of their child" must be
> considered by the team. [The] IDEA accords parents additional
> protections that apply throughout the IEP process. The statute also
> sets up general procedural safeguards that protect the informed
> involvement of parents in the development of an education for
> their child. A central purpose of the parental protections is to
> facilitate the provision of a "free appropriate public education,"
> which must be made available to the child "in conformity with the [IEP]."

*Winkelman*, 550 U.S. at 524, 127 S.Ct. at 2000 (*citing to and quoting*, *in parts*, 20 U.S. §§ 1414, 1415).

In this case, however, the Williamses are not asserting any claims under the IDEA. Thus, the issue arises as to whether the Rehabilitation Act and the ADA – which also deal with the rights of individuals with disabilities – similarly allow for independent enforceable claims by parents (and other similarly situated third parties) who allege damages based on the disability discrimination inflicted upon their child. The courts are split on the subject. The court in *K.F. v. Francis Howell R-III School District*, 2008 WL 723751 (E.D. Mo. Mar. 17, 2008), concluded that parents (and other similarly situated third parties) "do have standing under Section 504 [of the Rehabilitation Act] and the ADA as an aggrieved party in their own right." *Id*. at *7 (*relying on Blanchard v. Morton School District*, 509 F.3d 934, 938 (9th Cir.2007), *and C.J.G. v. Scranton School District*, 2007 WL 4269816, op. at *5-6 (M.D. Pa. Dec. 3, 2007)). By contrast, the court in *Hooker v. Dallas Independent School District*, 2010 WL 4025776 (N.D. Tex. Sept. 13, 2010), *adopted*, 2010 WL 4024896 (N.D. Tex. Oct. 13, 2010), held:

> This Court declines to so extend the *Winkelman* decision because it is too closely tied to the text and structure of the IDEA to apply equally to the ADA and the Rehabilitation Act.

*Id.* at *6. *Accord D.A. v. Pleasantville School District*, 2009 WL 972605, at *8 (D.N.J. Apr. 6, 2009); *J.R. ex rel. W.R. v. Sylvan Union School District*, 2008 WL 682595, at *1 (E.D. Cal. Mar. 10, 2008).

Having reviewed the relevant cases, the Court concludes that *Hooker* and similar cases are more persuasive. The integral, essential role of parents (or other similarly situated third parties) in the IDEA statutory scheme enacted by Congress is wholly lacking in the language for the Rehabilitation Act and the ADA. As such, the Court does not find that the *Winkelman* parental standing holding applies to claims brought under the Rehabilitation Act and the ADA.

4

Standing has both constitutional and prudential dimensions. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975); *Starr v. Mandanici*, 152 F.3d 741, 749 (8th Cir. 1998). Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to "cases" and "controversies." U.S. CONST. art. III, § 2. As such, a prospective plaintiff must satisfy three criteria. First, the plaintiff must have suffered an "injury in fact," or "an invasion of a legally protected interest which is . . . concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992). Second, the plaintiff must demonstrate the existence of a causal connection between the injury and the conduct complained of. *Id*. Finally, it is necessary to establish that it is " 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id*. at 561, 95 S.Ct. at 2205. In this case, the Court does find that the Williamses can satisfy Constitutional standing requirements.

With regard to prudential standing, however, the Court concludes that the Williamses cannot assert their claims for individual damages under the Rehabilitation Act and the ADA. Prudential standing limitations exist to "underscore the limitations embodied in Article III." *Miller v. Block*, 771 F.2d 347, 352 (8th Cir. 1985).

> The prudential principles of standing ensure that federal courts are not called upon to decide questions of broad social import in cases in which no individual rights will be vindicated, and [that] access to the federal courts [is] limited to those litigants best suited to assert the claims."

*Starr*, 152 F.3d at 749 (*citations omitted*). One prudential standing limitation provides that "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot

5

rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. 498-99, 95 S.Ct. at 2205.

After careful consideration of the statutory language employed in the portions of the Rehabilitation Act and the ADA from which the Williamses seek damages,[2] the Court concludes that those particular statutory enactments do not contemplate damage claims by individuals who do not themselves have disabilities nor have suffered discrimination based on their own disabilities. As such, the Williamses lack standing to pursue the claims asserted in Count II of their complaint. Moreover, as set out *infra*, even if the Williamses do have standing to pursue their individual claims under the Rehabilitation Act and the ADA, the Court finds that those claims are subject to exhaustion requirements that bar their present prosecution.

## B. Exhaustion of administrative remedies

As previously noted, a third statute plays an important role in ensuring that disabled students are not discriminated against and deprived of educational opportunities based on their disabilities – the IDEA. The IDEA provides for an initial interactive process between school districts and parents of disabled students. Thereafter, if a parent believes that their disabled child is not being afforded with a "free, appropriate public education" in the least restrictive environment, the parents are entitled to a hearing in accordance with the administrative procedures adopted by the state where the school district is located. 20 U.S.C. § 1415(f). Once

---

[2] Section 504 of the Rehabilitation Act and Title II of the ADA. For instance, the former statute applies to "qualified individual[s] with a disability in the United States." 29 U.S.C. § 794(a). Likewise, the latter statute applies to "qualified individual[s] with a disability." 42 U.S.C. § 12131(2).

such state administrative procedures have been exhausted, any party aggrieved by the administrative decision has the right to file a civil action in state or federal court.

To this end, the Eighth Circuit has noted that it is "well established" that the IDEA imposes an obligation on a party seeking judicial review to have exhausted "administrative remedies with regard to the issues upon which [they] seek judicial review." *Blackmon*, 198 F.3d at 655-56 (*and cases cited therein*). *See also* 20 U.S.C. §1415(i)(2)(A) (stating that a party aggrieved by the due process hearing panel's decision has the right to bring a civil action "with respect to the complaint presented"). Pursuant to this doctrine, any claim not "submit[ted] . . . for the hearing panel's determination . . . is barred unless an exception to the exhaustion rule applies." *Blackmon*, 198 F.3d at 656. The *Blackmon* court recognized three exceptions to the exhaustion requirement, to wit: (1) futility, (2) inability of the administrative remedies to provide adequate relief, and (3) the establishment of an agency policy or practice of general applicability that is contrary to law. *Id*.

The IDEA exhaustion-of-remedy requirement is important in this case because the IDEA also explicitly provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, . . . the Rehabilitation Act . . ., or other Federal laws protecting the rights of children with disabilities, <u>except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures [relating to an administrative due process hearing and appeal of decisions therefrom] shall be exhausted to the same extent as would be required had the action been brought under this subchapter</u>.

20 U.S.C. § 1415(l) (*emphasis added*). *See also Cave v. East Meadow Union Free School District*, 514 F.3d 240, 245 n.2 (2d Cir. 2008) ("[T]he IDEA's exhaustion requirement applies

7

equally to relief available under other statutes, such as the ADA, Section 504 [of the Rehabilitation Act], and § 1983, if the relief sought under those statutes would also be available under the IDEA."); *Kutasi v. Las Virgenes Unified School District*, 494 F.3d 1162, 1163 (9th Cir. 2007) ("We reaffirm the principle that plaintiffs must exhaust administrative remedies before filing a civil lawsuit if they seek relief for injuries that could be redressed to any degree by the IDEA's administrative procedures.").

In this case, it is undisputed that the Williamses have not exhausted their administrative remedies under the IDEA.[3] Thus, the Court must resolve two questions: (1) do the claims being pursued by the Williamses relate to injuries that could be redressed to any degree under the IDEA, and, if so, then (2) does an exception to the exhaustion requirement apply to this case.

In Count I of their complaint, the Williamses allege that M.W. is "disabled and in need of accommodations" that Avilla has refused to provide. The Williamses seek damages and an order requiring Avilla "to provide M.W. with compensatory education accommodations." In Count II, Tom Williams and Faye Williams seek damages for monies they have expended in seeking to secure M.W. with his educational rights, *e.g.*, the Williamses paid for an occupational evaluation of M.W. All of these claims are "educational in nature" and are (or could be) redressable under the IDEA. As one court has noted:

> The IDEA permits plaintiffs to file a complaint "with respect to <u>any matter relating</u> to . . . the provision of a free appropriate public education. Thus, we have held that whenever a plaintiff brings a claim that is "educational in nature" purporting to challenge the provision of educational services by a local school district, the claim is "presumptively redressable" through the IDEA's

---

[3] It is unclear from the parties' pleading as to whether administrative proceedings are ongoing with regard to the Williamses' contention that Avilla deprived M.W. of a "free, appropriate public education" in violation of the IDEA.

administrative procedures. This holds true regardless of what
statute the plaintiff purports to cite as the basis for the suit.

*Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1280 (10th Cir. 2007).[4] Based on the relevant case law, the Court concludes that the claims raised by the Williamses in Count I and Count II of their complaint are ostensibly subject to the exhaustion requirement mandated by Congress in 20 U.S.C. § 1415(l).

In their briefing with the Court, the Williamses argue that they are not required to have exhausted administrative remedies because they fall within one of three exceptions to exhaustion

---

[4] In their complaint, the Williamses, in part, seek monetary damages. Under the IDEA, the Eighth Circuit has held that "general and punitive damages" are not available under the IDEA. *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996). *But see School Committee of Burlington v. Department of Education*, 471 U.S. 359, 371, 105 S.Ct. 1996, 2003 (1985) (finding that reimbursement for educational expenses incurred during pending litigation was consistent with the Education of the Handicapped Act [the forerunner to the IDEA] statutory scheme because educational expenses specifically are not "damages"). Regardless of whether the exact remedy sought by the Williamses is available under the IDEA, the exhaustion requirement is still triggered. *See*, *e.g.*, *Payne v. Peninsula School District*, — F.3d —, —, 2011 WL 3211503, op. at *10 (9th Cir. Jul. 29, 2011) (IDEA exhaustion is required when "a plaintiff seeks an IDEA remedy or its functional equivalent" such as when a "a disabled student files suit under the ADA and challenges the school district's failure to accommodate his special needs and seeks damages for the costs of a private school education . . . regardless of whether such a remedy is available under the IDEA"). As noted by one court:

> The IDEA is intended to remedy precisely the sort of claim made by [the student]: that a school district failed to provide her with appropriate educational services. The fact that [the student] seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA.

*Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*, 288 F.3d 478, 488 (2d Cir. 2002). To be clear, the exhaustion requirement does not mean that plaintiffs such as the Williamses can never bring damage claims under the Rehabilitation Act or the ADA, it merely means that such claims may only be pursued after the plaintiffs' IDEA claims have been administratively exhausted.

recognized by the Eighth Circuit. Specifically, the Williamses contend that Avilla had in place a generally applicable policy that was "contrary to law." *Blackmon*, 198 F.3d at 656.

According to the Williamses, Avilla had in place during the relevant time period a systemwide policy (or practice) that discriminated against all students who were entitled to protection under the Rehabilitation Act and the ADA. The Williamses rely upon an investigation undertaken by the United States Department of Education, Office of Civil Rights ("OCR").[5] The OCR investigation was instituted after the Williamses complained that Avilla had:

(1) failed to assemble a group of individuals to determine M.W.'s eligibility for services under the Rehabilitation Act; and

(2) failed to evaluate M.W.'s need for special education or related services.

The OCR investigation concluded that Avilla was deficient in these two respects and OCR and Avilla have entered into an agreement to resolve the two allegations raised by the Williamses. The Williamses insist that the OCR investigation establishes that Avilla maintained a policy or practice of general applicability that was contrary to law. The Court disagrees.

While the OCR investigation did touch upon some general practices, its investigation was centered around and focused on Avilla's treatment of M.W. and his alleged disability. The Court is not convinced that passing references to Avilla's general approach to disabled students is sufficient to trigger an exception to the exhaustion requirement. In enacting 20 U.S.C. § 1415(l),

---

[5] Avilla objects to the Willaimses use of the OCR investigation and ensuing documents, arguing that they are unauthenticated and hearsay. Avilla has moved the Court to strike the OCR documents. DEFENDANT AVILLA R-XIII SCHOOL DISTRICT'S MOTION TO STRIKE [Doc. 45]. The Court denies that motion.

Congress employed broad language and evinced an unmistakable intent that educational claims asserted by disabled students be initially considered administratively under the IDEA state procedures. To that end, the exceptions to exhaustion must be viewed as "narrow exceptions." *Learning Disabilities Ass'n of Maryland, Inc. v. Board of Educ. of Baltimore County*, 837 F.Supp. 717, 722 (D. Md. 1993). The Court does not find that the OCR investigation and findings regarding M.W. (with passing references to Avilla's general policies and practices) is sufficient to permit the Williamses to do an end-run around the explicit Congressional desire that all claims– educational in nature – involving disabled students be administratively exhausted.[6]

For the foregoing reasons, it is

**ORDERED** that *Defendant Avilla R-XIII School District's Motion to Strike,* filed July 18, 2011 [Doc. 45] is **DENIED**. It is further

**ORDERED** that *Defendant Avilla R-XIII School District's Motion for Judgment On The Pleadings, Or In the Alternative, For Summary Judgment*, filed June 6, 2011 [Doc. 41] is

---

[6] Although not dispositive in and of itself, it should be noted that the allegations raised and the relief sought in the Williamses' complaint concerns only M.W. In Count I, the Williamses plead that "Avilla failed and refused to provide the necessary accommodations to M.W." and seek an order requiring Avilla "to provide M.W. with compensatory education accommodations" and a damages award to M.W. "To compensate him for the damages caused by Avilla's" violation of the rehabilitation Act and the ADA. Similarly, in Count II, the Williamses plead that they have been damaged by Avilla's violation of "M.W. rights" and seek an award of damages "due to Avilla's violations of M.W.'s § 504 and ADA rights." At no point in the complaint do the Williamses seek systemwide relief unrelated to M.W. *See, e.g., Baldessarre v. Monroe-Woodbury Central School District*, 2011 WL 2638448, op. at *12 (S.D.N.Y. Jun. 29, 2011) (no contrary-to-law exception to exhaustion where the plaintiff's complaint "specifically alleg[ed] that Defendants' actions discriminated against and interfered specifically with [the student's] education alone"); *Cave v. East Meadow Union Free School District*, 514 F.3d 240, 250 (2d Cir. 2008) (exhaustion was not excused because the complaint involved one student and there was no allegation of either a systemic violation or a structurally tainted administrative process).

**GRANTED** and judgment on both Counts I and II of the Complaint is granted in favor of Defendant Avilla R-XIII School District. It is further

**ORDERED** that the *Motion For Protective Order Or Order Sealing Evidence Submitted For Pre-Trial and Trial,* filed July 18, 2011 [Doc. 49] is **DENIED AS MOOT**. It is further

**ORDERED** that *Defendant's Motion For Leave to File Motion To Strike Plaintiffs' Expert Designation And Preclude The Testimony Of Plaintiffs' Expert Dr. Nancy Little,* filed July 27, 2011 [Doc 59] is **DENIED AS MOOT**. It is further

**ORDERED** that *Defendant Avilla R-XIII School District's Motion To Exclude Testimony And Exhibits Regarding The Office For Civil Rights' Investigation And Subsequent Findings*, filed July 29, 2011 [Doc 62] is **DENIED AS MOOT**.

                                       */s/ John T. Maughmer*
                                       **JOHN T. MAUGHMER**
                                       **U. S. MAGISTRATE JUDGE**